Good morning, Your Honor. May it please the Court, Wesley Fujimoto representing Triton Marine Construction. Maybe just keep your voice up a little. Yes, Your Honor. Maybe turn the mic up a little too. I'll speak more. Try to speak closely to the mic. Is this better, Your Honor? Try to protect your voice. All right, Your Honor. We have two appeals pending before the Court this morning. One involving the application of Section 10 of the Longshore and Harbor Workers' Compensation Act. The second appeal involves the application for attorney's fees and objections filed by Triton Marine with respect to that application. I'm limiting my arguments this morning with respect to the appeal on the application of Section 10. I believe the attorney's fees and those issues were discussed adequately in the brief, and I prefer to highlight the arguments that we raised in the appeal with respect to Section 10. Section 10 of the Longshore Act provides for the calculation of the average weekly wage for employees injured in the job and covered under the Longshore Act. The appeal is based upon the erroneous rejection of the application of Section 10A by the Administrative Law Judge on the benefits review board in this case. Your Honor, when you read 10A, it doesn't seem to cover the circumstances of this particular employee. Would you agree with that? Well, Your Honor, well, we deposit behind that 10A would be applicable with respect to the calculation, but we also believe that 10A, because the employee worked substantially for the full amount to make injury, for the same or a different employee, in this case, he worked for nine months with a prison spa and $15 an hour, and for two months with Triton Marine, he earned $32.49. We believe that the determination of how that comes, whether or not the, because he did work substantially for a year prior to the injury, whether the two jobs required the same or highly comparable skills, knowledge, and background in the performance of both jobs. And our contention is that the benefits review board, when following the Administrative Law Judge's order, bad by the rejection of the application of 10A under those circumstances. What's our standard of review for that? That would be the substantial evidence, Your Honor, and we believe that with respect to the record, there is substantial evidence in the record that demonstrates that the knowledge, skill, and background of the client in the all-spurs job, which was the $15 an hour job, that job required him to perform very similar, if not identical, type of skills that he performed with the Triton Marine. Well, that proposition you just stated is that there would be substantial evidence to support some other decision other than the one the ALJ and the board made, but the question is not whether it could have made some other decision with substantial evidence to support it. It's whether there is substantial evidence to support the one it did make. And our contention, Your Honor, is that the evidence that it relied upon in the determination of the, that the jobs were not similar, was erroneous, and that there was other evidence contained in the record that it should have relied upon that was substantial and therefore would have demonstrated that the two jobs in terms of the skill, knowledge, and background with the all-spurs par job should have been then considered in the calculation, which is how we calculated out the alleged wage that was submitted to the administrative law judge, which she rejected in our contention. As I was saying, Your Honor, the record demonstrates that the client himself had said that one of the reasons he got the job was because of his knowledge and background in the fixing of leaks and pools and fixing of plumbing, et cetera. And so there was evidence that demonstrated that the type of work that he performed, he himself had, as his testimony, had offered to the employer, Triton Marine, to then attend the job. Triton Marine, with that knowledge, said, yes, yes, I'll work you near what we need, and therefore, as according to the claimant, and therefore then was hired. The other types of information in the file were also established at the top of skills, such as the operation of equipment, such as heavy equipment, high lift, et cetera. He did that at the all the pools and spa. He continued to do that at Triton Marine. The AMJ emphasized that the use of the equipment required further certification and training. However, the claimant had testified at the hearing that the training that was required was minimal and the certification required just a small class. And so with the type of evidence that was contained in the file, we believe and submit that there was substantial evidence in the record to find unauthorized, as the AMJ had concluded. And therefore, the reliance upon the information and evidence that the AMJ cited was insubstantial in terms of supporting her decision that Section 10A would not apply. Also, in the application of 10A, the AMJ had cited to the wages earned by the claimant at Triton Marine, and the wages was $32.49. Of that, the AMJ cited in her fax that $22.10 was relayed to the wages that was paid, and the $10.39 was either fringe benefits or prevailing wage component. You didn't raise that before the board. Is that correct? We did not raise the – and I'll get into that in terms of the analysis that we had proposed to the board in terms of utilizing the data spec. We also raised it before the ALJ. And our contention was that in terms of the substantial similarity of the positions, that the AMJ should consider the $22.10 as being the wages that should be considered as opposed to the $32.49 to take away the $10.39 that was part of the fringe benefit that a data spec employee would receive. That's a different argument. That's an argument that his work is not substantially different because there's not a great difference in wage. And that's a different argument from saying what the calculation would be if benefits are to be awarded. Well, what we were arguing in the alternative, what we were raising with the ALJ, was the separation of the $32.49 to have the $22.10 be the comparable wage rate for a position such as a labor and to utilize that wage rate in the comparison. The judge simply stated that there's a great disparity between the $15 and the $32.49, and that in and of itself demonstrated greater skills required for the performance of the job at Triton Marine. Our contention is that the additional amount of $10.39 should not have been considered, not necessarily in terms of the calculation because in 10A we included that in our calculations. Why? Because what we're trying to do is give the full representation of his actual earnings through the course of the year prior to the injury. But the application or utilization of the $10.39 by the ALJ multiplied the wage level of the claimant well beyond what the position, at least for $22.10, would have commanded in the open market. The $10.39, as I mentioned, was a fringe benefit payment under the Davis-Bacon for this particular project. The claimant was stating that the job was one that he found to be prevalent. It was prevalent with Triton, not necessarily prevalent in terms of all his jobs being Davis-Bacon jobs, allowing him to receive the additional fringe benefit payment. Our contention is that a fair evaluation in terms of his wages for work at Triton, in terms of comparison of substantial similarity between the two jobs, would have been utilizing the $22.10 and comparing it in that fashion. And we believe the ALJ earned by blanketly accepting that the $22.49 represented the actual earnings that the claimant could have commanded and therefore, in comparison to the $15, demonstrated substantially more skills, knowledge, and background for the position. In the record to indicate what percentage of Triton's work is subject to Davis-Bacon? It wasn't presented in the file. But the claimant had testified that the job that he worked on was a Davis-Bacon, that the wages had been paid separately, but nothing in terms of what future jobs would be, whether or not they would be covered under Davis-Bacon or not. The second argument that we had raised with respect to the application of Section 10 was following the rejection of the application of Section 10, it was the erroneous application of Section 10C by the ALJ and Administrative Law Judge in the Benefits Report acceptance of that application. The Administrative Law Judge in her decision stated that she did not have to consider the prior earnings of the claimant. Our contention is the statement by the ALJ in her decision that she need not consider the earnings from the prior claimant, that was error. The case that we've cited said that she at least must consider the prior earnings. In this case, she simply said, I need not consider it, and presumably did not consider it, because the discussion following that statement did not specifically address any of the $15 earned at all pools and spa. Would this be predicated on her determination that a different skill level was involved in the new job? It's one where the discussion would have had to have occurred with the statement that it was, she did not consider it at all, or need not consider it at all. She had made the determination, look, the skill level's different, and then she goes on and says, I don't need to consider the wage rate, the prior wage rate. Does that make sense? It was the only thing for her to make that statement and to specifically state that she had considered and rejected the $15 an hour from all pools and spa, but that was not done within the decision, and we believe that by making the statement that she need not consider it at all and then rejected our contention at least indicated to Triton that that type of discussion and fact-finding did not occur and therefore was error on the part of the AOJ, and acceptance of the AOJ's decision by the Benefits Review Board on appeal was also an error, as it seemed to accept her findings and conclusions with respect to that issue. Rather than, I'll reserve further time, Your Honor, unless you have further questions for me, but what I'd like to simply conclude is our contention is that the administrative law judge in her findings and decision and the Benefits Review Board on review of that decision erred in the rejection of the application of Section 10A and also the application of 10C in the manner that it did. Thank you. Thank you. May it please the Court, I am Joshua Glellen appearing on behalf of the claimant, Darren Schneider, and his attorney below, Jay Friedheim. I must begin by apologizing to the Court, as I have to my brother Fujimoto, for the several intemperate characterizations, cheap shots, and particularly for the final footnote in the brief on the fee appeal. I could only squirm as I read over the briefs, and I recognize that there's no proper place for that, and I do apologize. On the merits appeal, I think the recent decision of this court in Healy Tibbetts' case, which I have submitted with a Rule 28J letter, is virtually on all fours with this case, as indeed is the 20-some-year-old opinion of the court in National Steel against Bonner. The ALJ here explicitly found, based on unrebutted testimony, that but for his injury, claimant would have continued to be compensated by Triton at a rate of $32.49 per hour. It is this higher wage that accurately reflects the claimant's future earning capacity. Therefore, in applying Section 10C, only claimant's wages from Triton must be considered. Now, that is the dispositive finding of fact under the authorities of this court, and I think under the standard of Section 10C of the Act itself. Given these findings of fact, even if the ALJ's finding that the skill levels of the two jobs were not fully comparable, were not supported by substantial evidence, it would not matter. That is, if someone has worked, for example, as a non-union longshoreman, there is such a thing in a few ports, at $15 an hour, and then had gotten a job as a union longshoreman making $32.49 an hour for performing exactly the same work, and been injured a couple of months after getting the new position, the appropriate wage analysis would be just what the ALJ did here. Likewise, even if Triton did somehow preserve its present contention that the Davis-Bacon $10.39 an hour that was designated as Davis-Bacon fringe payments should not have been included, that argument is erroneous as a matter of law. The payments were not in any way speculative. They were cash payments that were fully taxable, and under the definition of wages in the Longshore Act, Section 213, as it was amended in 1984, that fact alone is dispositive that they are to be included. Whether they were a substitute for fringe benefits that might have been paid by a different employer or otherwise, there is nothing whatsoever speculative about the value of $10.39 an hour. It is $10.39 an hour. If Triton Marine had put on evidence that they did essentially very little Davis-Bacon work, that would be a different matter, I would assume. It would absolutely, yes. I believe it would be so acknowledged explicitly in our brief. There is, however, no such evidence, and in fact, the evidence was to the contrary. There was evidence of another Davis-Bacon job that Triton already had that Schneider could have applied for. It would have required him to relocate. The evidence indicated not that he had decided to so relocate, but that he had considered it. But we have an explicit finding of the ALJ that, but for the injury, claimant would have continued to receive $32.49 an hour. There has been no attempt even by Triton to argue that that finding is unsupported by substantial evidence in the record. The ALJ made the finding based on Schneider's unrebutted testimony. He had been told when he was hired, as he testified, again, without contradiction or rebuttal, told by the Triton manager who hired him that this was a permanent position and that he could expect to continue to receive that wage. I would like to briefly address the appeal from the fee award, simply to point out that the determinative consideration is the highly deferential scope of review of the board's award of fees for the work done before it. The great majority of the challenged entries certainly did relate directly to the appeal, and Triton's only argument against those entries is that they did not relate to the issue of average weekly wage and that it's not good enough that they related to the appeal before the board, if they did not relate to that specific issue. Now, there are lots of services with respect to a case which don't even relate to the issue. For example, receipt of the employer's notice of appeal. There are also, of course, services that don't result in the filing of anything, such as, for example, the time counsel devoted to reviewing the employer's reply brief and researching the cases that were newly cited in that reply brief that had not been cited in their opening brief. These are absolutely reasonable services which one must perform on behalf of a client whose vital interests are at stake, as Mr. Schneider's were on this appeal, and are, and they were reasonably performed. That's the standard, not whether they relate to the specific issue, but whether they are part of the services performed before the tribunal. If the court has any questions, I'd be happy to address anything further otherwise. Thank you very much for your attention. Thank you. Unless your honors have further questions of Triton Marine, Triton Marine will stand on its argument. Very well. Thank you. That will stand admitted, and the court will recess until 8 a.m. tomorrow morning.
judges: B. Fletcher, Pregerson, Canby